**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND | * | |
| ALLIED TRADES INDUSTRY PENSION | * | |
| FUND, et al. | * | |
| | * | |
| v. | * | Case No. ELH-11-2389 |
| | * | |
| METRO GLASS & MIRROR, INC. | * | |
|  d/b/a GDK Glass and Mirror, Inc. | * | |
| | ****** | |

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Judgment by Default (Paper No. 9) and Supplemental Memorandum (Paper No. 12) filed by Plaintiffs International Painters and Allied Trades Industry Pension Fund ("Pension Fund") and Gary J. Meyers ("Meyers") (collectively "Plaintiffs").[1]   Defendant Metro Glass & Mirror, Inc. ("Metro") has not filed an opposition, and its deadline has now passed.   On January 18, 2012, Judge Hollander referred this case to me to review Plaintiffs' motion and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6.   (Paper No. 10).   An evidentiary hearing on Plaintiffs' motion was held on March 7, 2012.   For the reasons discussed herein, I respectfully recommend that Plaintiffs' motion (Paper No. 9) be GRANTED and that damages be awarded as set forth herein.

I.      **BACKGROUND**

On August 25, 2011, Plaintiffs filed a Complaint in this Court alleging that Metro failed to make contributions required under the Employee Retirement Income Security Act of 1974

---

[1] The caption of the Complaint also lists "Painters and Allied Trades Labor Management Cooperation Initiative," and "Political Action Together Fund" as Plaintiffs.   However, no reference to those two Plaintiffs appears in the body of the Complaint, and they are not mentioned in the Motion for Judgment by Default.

("ERISA").  Specifically, Plaintiffs allege that Metro employed members of local labor unions or district councils affiliated with the International Union of Painters and Allied Trades ("the Union") and agreed to abide by a Collective Bargaining Agreement ("CBA").  Complaint ¶¶# 10-11.  The CBA, along with the Agreement and Declaration of Trust of the Fund ("Trust Agreement") established and maintained the Pension Fund.  Complaint ¶ 12, Exh. 2.  The Pension Fund and Meyers are authorized collection fiduciaries and agents for the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan, which are "multiemployer plans," "employee benefit plans," and "employee benefit pension plans" as defined by ERISA.  Complaint ¶¶ 5-6, 8.

As a corporate employer utilizing Union employees, Defendant Metro agreed to abide by the terms of the CBA and the Trust Agreement.  Complaint ¶¶ 10-11.  Those obligations included (1) making full and timely payment on a monthly basis to the Pension Fund as required by the CBA, Trust Agreement and plan documents; (2) filing monthly remittance reports with the Pension Fund detailing all the employees or work for which contributions were required under the CBA; (3) producing books and records for an audit upon request by the Pension Fund; and (4) paying liquidated damages, interest, audit costs, and litigation costs including attorneys' fees expended by the Pension Fund in collecting amounts due as a result of Metro's failure to comply with its contractual and statutory obligations.  Complaint ¶ 14.

Plaintiffs' Complaint alleges that Metro has failed to pay amounts due from August, 2010 through December, 2010, in at least the sum of $14,277.06.  Compl. ¶ 26.  The Complaint requests the sum certain amount "plus any additional amounts which may become due during the pendency of this lawsuit, together with interest at the rate(s) prescribed by 26 U.S.C. 6621 from the due date for payment until the date of actual payment, liquidated damages equal to the

greater of the interest paid on the unpaid contributions or liquidated damages provided by the documents governing the ERISA funds or statute, the cost of any audit and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment all as provided under the Trust Agreements, plan documents of the ERISA Funds, and 29 U.S.C. §1132(g)(2)." Compl. at 6.

Plaintiffs filed their Complaint on August 25, 2011.  Metro was served with the summons and Complaint on August 30, 2011 (Paper No. 4).  After Metro failed to file an Answer or otherwise defend, Plaintiffs filed a Motion for Entry of Default (Paper No. 6) on December 6, 2011, which the clerk granted on December 7, 2011. (Paper No. 7).  Plaintiffs thereafter filed a Motion for Judgment by Default (Paper No. 9) on January 17, 2012, seeking a total award of $17,794.54.  In support of their motion, Plaintiffs attached the Affidavit of Thomas Montemore, the Assistant to the Fund Administrator of the Pension Fund, (Paper No. 9-1, Exh. 1), and Affidavit of Counsel, Philip A. Lozano, Esq. (Paper No. 9-1, Exh. 5).  Mr. Montemore's affidavit alleged that Metro owed the Pension Fund $9,550.14 in contributions, $342.62 in interest, and $1,432.52 in liquidated damages.  (Paper No. 9-1, Exh. 1 at ¶9).  Mr. Lozano's affidavit supported a request for attorneys' fees in the amount of $6,469.26.  (Paper No. 9-1, Exh. 5 at ¶2).

Because the amounts of the alleged contributions differed between the Complaint and the Motion for Judgment by Default, on February 7, 2012, this Court asked Plaintiffs' Counsel to file a supplemental memorandum with documentation supporting the calculation of overdue contributions.  (Paper No. 11).  On February 21, 2012, Plaintiffs filed a Supplemental Memorandum.  (Paper No. 12).  The Supplemental Memorandum was not accompanied by any new affidavits, but it attached some remittance reports and a calculation of interest.  Because discrepancies remained between the calculations contained in the various filings, an evidentiary

hearing was held on March 7, 2012.  At that hearing, Mr. Montemore testified and provided the factual basis for his calculations of $9,550.14 in contributions, $342.62 in interest, and $1432.52 in liquidated damages.

## II.    STANDARD FOR DEFAULT JUDGMENT

In reviewing Plaintiffs' Motion for Judgment by Default, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001).  It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action.  *Id.*; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages.  *Ryan*, 253 F.3d at 780-81.  The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.  *See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999).  In so doing, the court may conduct an evidentiary hearing.  Fed. R. Civ. P. 55(b)(2).  The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award.  *See, e.g., Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum); *see also Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, 2011 WL 5151067 at *4 (D.Md. Oct. 27, 2011) (determining, in a similar

case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested."); *Pentech Fin. Servs. Inc. v. Old Dominion Saw Works, Inc.*, 2009 WL 1872535 at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought).

In sum, (1) the court must determine whether the unchallenged facts in Plaintiffs' Complaint constitute a legitimate cause of action, and, if they do, (2) the court must make an independent determination regarding the appropriate amount of damages and the appropriate injunctive relief.

## II.    DISCUSSION

### a.  Metro's Liability under ERISA and Contract Claims

Plaintiffs allege that Metro's failure to make its required contributions constitutes a breach of its contractual obligations, and therefore also constitutes a violation of Section 515 of ERISA and Section 185 of the Labor Management Relations Act ("LMRA").   This Court agrees.

Section 515 of ERISA provides in relevant part:

> Every Employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with . . . such agreement.

29 U.S.C. § 1145. As the Fourth Circuit has noted, "section 515 puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery and Confectionery Union and Industry Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997) (citations omitted).   Specifically, an employer is prohibited from

asserting certain defenses against a multiemployer fund that the employer might be able to assert against the union itself. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.,* 870 F.2d 1148, 1153 (7th Cir. 1989) (noting that oral agreement to modify the text of a CBA cannot be enforced against pension plans); *Agathos v. Starlight Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (holding that defense of fraud in the execution cannot be applied to pension funds).   ERISA allows the recovery of damages in an action to enforce the payment of unpaid contributions.  29 U.S.C. §1132(g)(2).

The LMRA, 29 U.S.C. § 185(a), provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organizations representing employees in an industry affecting commerce."  Employee benefit fund trustees have standing to sue under § 185(a) as third-party beneficiaries of a CBA.  *See, e.g., Chicago Plastering Inst. Pen.Tr. v. W.A. Duguid*, 761 F.Supp. 1345, 1347 n.2 (N.D. Ill. 1991); *Hudson County Carpenters Local Union No. 6 v. V.S.R. Constr. Corp.*, 127 F.Supp.2d 565, 568 (D.N.J. 2000).

As described above, Plaintiffs' Complaint alleges that Metro was party to a CBA that required contributions to be made, and further alleges that Metro failed to make the required contributions.  Plaintiffs' Complaint further alleges their standing as third-party beneficiaries of the CBA.  Those allegations establish Metro's liability to Plaintiffs under both ERISA and the LMRA.  *See Hudson County Carpenters Local Union No. 6 v. V.S.R. Const. Corp.,* 127 F.Supp.2d 565, 568 (D.N.J. 2000) ("It is well-established that the failure to make contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § [1145] and a violation of LMRA § [185].")  On that basis, I recommend that Plaintiffs' Motion for Judgment by Default be granted.

**b.  Damages**

Under Section 502(g)(2) of ERISA, an employer who fails to make contributions required by Section 515 is liable to the multiemployer fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of up to twenty (20) percent of the amount of the unpaid contributions, and reasonable attorneys' fees and costs.  29 U.S.C. § 1132(g)(2).

**(1) Unpaid Contributions**

According to the affidavit of Thomas Montemore, the Assistant to the Fund Administrator of the Pension Fund, Metro owes $9,550.14 in contributions for the period of August 2010 through December 2010.  Mot. for Judgment by Default, Exh. 1 at 3.  Although Mr. Montemore's affidavit did not provide any attached documentation, his testimony at the evidentiary hearing established that the total amount of delinquent contributions owed by Metro for the period of July 2010 through December 2010 was $13,685.70.  Mr. Montemore testified that Metro then made six separate payments in the amount of $689.26 towards that balance, for a remaining total due of $9,550.14.  As a result, I recommend an award of $9,550.14 as requested in the Motion for Judgment by Default.

**(2) Interest**

The document attached to the Supplemental Memorandum, ECF No. 12-3, provides the calculation of interest on the overdue amount of $9,550.14.  Mr. Montemore testified at the evidentiary hearing that he used the IRS interest rates in effect during the relevant time frames to calculate that number.  The interest in the amount of $342.62 appears to have been appropriately calculated, and I recommend that it be awarded as requested.

### (3) Liquidated Damages

While the statute allows up to twenty (20) percent of the amount of the unpaid contributions, by contractual agreement the appropriate percentage is fifteen (15) percent.  Pl. Mem. Exh. 2 at 20-21.   As Mr. Montemore testified, fifteen (15) percent of $9,550.14 is $1,432.52.  I therefore recommend an award of $1,432.52 in liquidated damages.

### (4) Attorney's Fees and Costs

Plaintiffs claim a total of $592.26 in costs for items such as photocopies, computer research, filing fees and service fees.  Those are reasonable charges for out-of-pocket expenses incurred by attorneys in the representation of their clients, and I recommend they be awarded.

In calculating the appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).  A trial court may exercise its discretion in determining the lodestar amount because it possesses "'superior understanding of the litigation,'" and the matter is "'essentially'" factual. *Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)).  Once the lodestar amount has been determined, the Court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative.  In evaluating both the lodestar calculations and the overall reasonable fee, this

Court uses "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)."   *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (*citing Johnson*, 488 F.2d at 717-19).

Plaintiffs' attorneys in this case billed an equal hourly rate of $220 for each of three different attorneys who worked on the matter, and $70 for each of their paralegals (and one attorney who had not yet passed the bar exam).   Because the attorneys had varying years of practice, the hourly rates charged for each attorney do not entirely comport with the "Guidelines for hourly rates" set forth in Appendix B of the Local Rules of this Court.   However, these Guidelines are not definitive; they are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B n.6.

Despite the divergence from the Guidelines in some instances, the total amount of fees and costs sought, $6,469.26, constitutes a reasonable fee for several reasons.   First, the total hours worked and billed appear reasonable.   A significant portion of the time drafting the motion for default is unbilled and compensation is not sought, which more than compensates for any discrepancy between the rates used and the Guidelines rates for the attorneys.   Plaintiffs' counsel also do not seek fees for the preparation and filing of the Supplemental Memorandum or for the evidentiary hearing, in recognition of the fact that those hours would have been unnecessary had

a clear record been included with the initial Motion for Judgment by Default.  Second, while the attorney working the most hours, Philip Lozano, is billed at a rate arguably slightly higher than customary for an attorney with five years of experience,[2] other practitioners are billed at rates lower than those permitted by the guidelines.  Specifically, the Guidelines rates for paralegals, law clerks, and the one attorney with ten years of experience are higher than those charged by Plaintiffs' counsel.   Finally, the total amount sought appears to be within the range of fees and costs awarded in similar cases in this district.  *See, e.g.*,  *Int'l Painters and Allied Trades Indus. Pension Fund v. H.C. Ackerman & Son, Inc.*, 2012 WL 251963 (D. Md. January 24, 2012) (awarding $6,928.26 in fees and costs);  *Plumbers & Steamfitters Local 486 Pension Fund v. RLS Heating, Air Conditioning, & Refrigeration, LLC*, 2010 WL 5391450 (D. Md. Dec. 22, 2010) (recommending an award of $5,845.75 in fees and costs).  For those reasons, I recommend an award of fees and costs in the total amount of $6,469.26.

### c.   Injunctive Relief under the CBA

Plaintiffs seek certain injunctive relief allowed by the terms of the CBA.  Specifically, the CBA requires Metro to submit monthly remittance reports and to produce all of its payroll books and financial records to allow a contribution compliance audit.   Pl. Mem. Exh. 2 at 20. Injunctive relief requiring compliance with those terms is appropriate because Metro has already agreed to those contractual obligations, and because this Court has authority to order an audit under ERISA.   29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E).   I therefore recommend that the requested injunctive relief be granted.

### Conclusion

---

[2] The Guideline hourly rate for an attorney admitted for five (5) to eight (8) years is $165-250. $220 is therefore in the middle to higher end of that range.

For the reasons set forth above, I recommend that:

1. The Court GRANT Plaintiffs' Motion for Judgment by Default (Paper No. 9); and

2. The Court award Plaintiffs $9,550.14 in unpaid contributions, $342.62 in interest, $1,432.52 in liquidated damages and $6,469.26 in legal fees and costs for a total of $17,794.54.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendant Metro at the address listed on Plaintiffs' Complaint (Paper No. 10).

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: <u>March 13, 2012</u>       <u>  /s/     </u>
                  Stephanie A. Gallagher
                  United States Magistrate Judge